UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY DEWAYNE SHELBY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-00821-JAR |
| | ) | |
| SHANNON OAKS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on cross motions for summary judgment filed by Defendant Shannon Oaks ("Oaks") (Doc. No. 45) and Plaintiff Jimmy DeWayne Shelby (Doc. No. 52). Also before the Court is Plaintiff's motion for appointment of counsel. (Doc. No. 55). The motions are fully briefed and ready for disposition. For the reasons set forth below, Defendant's motion for summary judgment will be granted. Plaintiff's motion for summary judgment and motion for appointment of counsel will be denied.

**I.    Background**

Plaintiff, who is proceeding pro se, brings this action under 42 U.S.C. § 1983 against Oaks, a certified nurse practitioner who was at all relevant times employed by "Corizon Health" at the Missouri Department of Corrections at Eastern Reception and Diagnostic Correctional Center ("ERDCC"). Oaks treated Plaintiff while he was an inmate at ERDCC, and Plaintiff

alleges that Oaks was deliberately indifferent to his serous medical needs while he was confined there.[1]

The operative complaint contains the following allegations: Plaintiff claims that that he had been approved for surgery to correct his cervical spine stenosis, but Oaks disregarded the recommendation and decided to pursue alternative epidural treatment. He claims that during his numerous appointments with Oaks, he requested that MRIs be taken of his back and that he be approved for surgery. He claims Oaks refused "every time." Plaintiff further alleges that Oaks told him that "Jefferson City is cutting back on having any surgeries performed."

Plaintiff also claims that he complained of swollen knees, that he sought a special mattress and wheelchair for his conditions, and that those requests were refused. Plaintiff seeks a Court order mandating that MRIs be taken of his back and that he be approved for surgical procedures to his cervical, thoracic, and lumbar spine. He also seeks compensatory and punitive damages.

**II.    Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In determining whether

---

[1]    Plaintiff also named as defendants the Missouri Department of Corrections, Corizon Healthcare, Inc., Troy Steele, and Shannon Owens. Following the Court's frivolity review, Oaks is the sole remaining Defendant.

summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. *Osborn v. E.F. Hutton & Co., Inc.*, 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour & Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993).

**III.    Facts[2]**

Plaintiff suffers from chronic neck and back pain, and he was enrolled in a chronic care program at the ERDCC. On October 19, 2015, Plaintiff's then-treating nurse submitted a request for Plaintiff to see a neurosurgeon due to his cervicalgia with upper extremity neuropathy. The regional medical director ("RMD") approved the request "for neurosurgery consult." (*Id.* at 14).

On January 20, 2016, Plaintiff saw Philippe Mercier, M.D., a neurosurgeon at St. Louis University ("SLU") Neurosurgery. Dr. Mercier had not received Plaintiff's most recent MRI, so he examined Plaintiff and planned to review the MRI, noting "If there is any possible findings, we will bring the patient back to clinic for review of his imaging." (*Id.* at 15).

Plaintiff followed up with Oaks on February 2, 2016, at which time he requested "lay-ins" and a special mattress. The next day, his MRI disc was received from Vista Imaging and sent to SLU Neurosurgery to be reviewed.

On February 5, 2016, Plaintiff again treated with Oaks, who told Plaintiff that his MRI discs had been sent out, and she noted that he had no new complaints. Oaks assessed chronic neck/back pain and bilateral hand pain. She ordered Capsaicin cream for his hands after soaking

---

[2]    Except where specifically stated, the facts are taken from the Court's own review of Plaintiff's "Complete Medical Record History." Facts are also taken from Oaks's Statement of Uncontroverted Material Fact (Doc. No. 46) and the affidavits submitted by the parties, and those will be specifically identified.

in warm water. Oaks planned to follow up after she heard from SLU Neurosurgery regarding next steps.

On February 15, 2016, Plaintiff met with Director of Nursing Todd Renshaw in response to Plaintiff's informal resolution request, in which Plaintiff complained that his neck surgery was being prolonged. Plaintiff in his affidavit claims that Renshaw told Plaintiff that the neurosurgeon had already viewed the MRI disc and wanted to perform the surgery. However, in his written response to Plaintiff's grievance, Renshaw wrote, "MRI forwarded to surgeon. He wants to proceed [with] surgery." Renshaw in his affidavit asserts that "He wants to proceed [with] surgery" refers to Plaintiff, not Dr. Mercier. Renshaw asserts that he never spoke to or heard from Dr. Mercier, and neither Dr. Mercier nor any other neurosurgeon from SLU Neurosurgery followed up with the ERDCC medical staff. (Renshaw Aff., Doc. No. 46-3 at ¶ 5).

On March 11, 2016, Oaks submitted a neurosurgery referral request because she was "unable to get communication from SLU concerning plans since consultation after several attempts."[3] (*Id.* at 25). Oaks discussed the matter with the RMD, and he approved the request.

On March 23, 2016, Plaintiff saw Jeff Lehmen, M.D., at SSM Health. Dr. Lehmen diagnosed cervicalgia and noted that a diagnosis of osteoarthritis of the spine. He recommended a referral to an Ear, Nose, and Throat ("ENT") specialist for a vocal cord analysis prior to a right side anterior cervical discectomy and fusion ("ACDF") procedure at the C4-5 level with removal of the existing hardware at C5-6.

On March 28, 2016, Oaks submitted referrals for Plaintiff to see the ENT for a vocal cord analysis before returning to Dr. Lehmen for surgery. Oaks states in her affidavit that the RMD responded to the surgery request by asking how the injury impacted Plaintiff's activities of daily

---

[3] Plaintiff disputes this claim. In support, he claims that the record does not reflect multiple attempts being made by Oaks to contact SLU Neurosurgery. (Doc. No. 56 at 3).

living, to which Oaks responded that there were no specific reports of the injury affecting Plaintiff's activities of daily living. (Oaks Aff., Doc. No. 46-1 at ¶ 17). She did, however, communicate that Plaintiff suffered from constant numbness and tingling to his left arm and that he ambulated with a cane. The RMD directed Oaks to resubmit the ENT referral request at a later date if Plaintiff moved forward with surgery.

On April 1, 2016, Plaintiff met with Oaks for a follow up visit after his consultation with Dr. Lehman. He reported constant neck pain, numbness to left fingers and feet, and low back pain. Oaks indicated that she would supplement the referral request with this information. Oaks ordered alpha lipoic acid for pain and ordered x-rays of the thoracic and lumbar spines, the results of which reflected no changes from Plaintiff's prior imaging.[4]

On April 4, 2016, the RMD denied the surgery referral request and directed Oaks to "Consider [epidural steroid injections] (in light of no motor involvement) before surgery to see if this provides relief without risk of surgery." (Doc. No. 46-2 at 32). Oaks in her affidavit stated that "Because this type of surgery is very invasive, it was medically appropriate to exhaust all conservative measures before proceeding with the risks associated with the surgery." (Oaks Aff. at ¶ 17). She submitted a referral request for an epidural steroid injection per the alternative treatment plan, which was approved.

On June 27, 2016, Plaintiff saw Dr. Lucio for an epidural steroid injection. However, Dr. Lucio could not proceed with the procedure because Plaintiff had not stopped taking certain medications. On July 15, 2016, NP Shannon Owens submitted another request for the epidural steroid injection with Dr. Lucio, which was approved.

---

[4] Plaintiff in his affidavit claims that at this visit, Oaks told him that "Jefferson City is cutting back on having any surgeries performed." (Pl. Aff., Doc. No. 52-2 at ¶ 7). However, Oaks denies that she ever made such a statement. (Oaks Aff., Doc. No. 46-1 at ¶ 18).

On July 22, 2016, Plaintiff had x-rays of his right knee after complaining of pain. According to the radiology report, the x-rays showed: (1) medial joint space narrowing; (2) densities suggestive of chondrocalcinosis; and (3) negative findings for acute/healing osseous injury or obvious joint effusion.

On November 21, 2016, Plaintiff returned to Dr. Lucio and underwent the epidural steroid injection. Dr. Lucio diagnosed failed neck syndrome primarily with cervical radiculopathy and cervicalgia also pertinent. Oaks saw Plaintiff again on December 6, 2016, and Plaintiff reported his tingling/numbness had improved in his neck and shoulder and were completely resolved. However, he reported no change in hand numbness. Overall, he reported that he was very satisfied with the results, and the medical records do not reflect Plaintiff complaining of any pain during this visit.[5]

Oaks saw Plaintiff again on January 31, 2017, and he requested his Naproxen dosage to be increased to 500 mg twice per day. Oaks ordered the increased dose of Naproxen and lumbar spine x-rays to compare to 2016 images based on new complaints, which Plaintiff underwent on February 7, 2017. Plaintiff's x-rays reflected no change. Oaks also ordered x-rays of the right hip, pelvis, and right knee to assess the cause of his discomfort. Those x-rays showed mild hypertropic changes in his pelvis, mild degenerative changes in his hip, and mild degenerative changes in his knee.

On March 11, 2017, Oaks renewed Plaintiff's medications. In May, June, July, September, and November, Plaintiff was treated for complaints related to his chronic pain. Plaintiff reported difficulty walking and requested a wheelchair. Plaintiff's lay-ins were

---

[5] Plaintiff asserts that he had slight pain to the right side of his neck during this visit. (Doc. No. 53 at 9-10).

continued, and Plaintiff received a wheelchair in September. He was able to complete his activities of daily living, and Oaks prescribed medications for various ailments.

On December 6, 2017, Oaks submitted a request for Plaintiff to have an MRI of his lumbar spine, which was approved, and he underwent that MRI on December 21, 2017. It reflected degenerative changes of L4-5 and L5-S1 with no significant central canal narrowing. However, there was some encroachment on the neural foramen particularly on the right at L4-5 and L5-S1.

> In her affidavit, Oaks stated the following regarding foraminal encroachment:
>
> Treatment of foraminal stenosis begins conservatively, with rest, physical therapy, stretching, braces, hot or cold compresses, over the counter pain medications or NSAIDs, antidepressants and anti-seizure medications, and ESIs. If all conservative treatment fails, then surgery is considered an option.

(Oaks Aff. at ¶ 36).

On January 16, 2018, Oaks discussed Plaintiff's MRI results, and Plaintiff reported that his right knee had not been bothering him since about the beginning of January 2017. Oaks assessed degenerative disc disease of the spine; pseudogout knees, stable; acute left hip/groin pain (consider iliopsoas tendonitis); and interdigital tinea pedis (Athlete's foot). Oaks prescribed prednisone and miconazole topical cream. That same day, Oaks submitted a referral request for Plaintiff to see a neurosurgeon. The request noted Plaintiff was a 60-year-old male with a history of hypertension, dyslipidemia, hypothyroidism, and back surgeries in 1998 and 2003. She noted that Plaintiff had progressively lost mobility over the last few years. She also noted Plaintiff underwent an MRI of the lumbar spine in December 2017 with significant findings.

Oaks's request was denied. The RMD concluded that the MRIs did not show findings that would necessitate surgical intervention prior to conservative management options being tried without improvement. The alternative treatment plan recommended formal physical therapy,

activity modification, and analgesics, followed by reassessment in six weeks to evaluate for improvement. Thereafter, Oaks submitted a request, which was approved, for the physical therapy.

On February 1, 2018, Oaks saw Plaintiff for the final time and discussed the alternative treatment plan for physical therapy. Oaks in her affidavit reported that Plaintiff stated he understood why they were proceeding with physical therapy, but he did not understand how it would stop degeneration. (Oaks Aff. at ¶ 40). Oaks states in her affidavit that she discussed the rationale for less invasive options before surgical options such as the increased risks with surgery to include significant infections or death. (*Id.*). She states that she ordered a trial of Gabapentin with up-taper for pain control and explained that after physical therapy was complete they would re-evaluate the need for surgery. (*Id.*). Oaks had no further involvement with Plaintiff's care. (*Id.*).

The record indicates that between June 30, 2015 and September 15, 2017, Plaintiff submitted 13 grievances demanding surgical intervention and MRIs, as well as other requests. Each of the grievance responses included a recitation of Plaintiff's medical treatment history and how his complaints were being treated. At times, the response explained that surgical intervention had not been ruled out or that Plaintiff had been seen for the complaint since filing the grievance. (*See generally* Doc. No. 52-3). In November 2016, the grievance response indicated that the nursing staff had spoken with his providers regarding his request for a specialty mattress but noted that "An egg crate mattress has not been prescribed to treat [his] back pain" and was not medically indicated. (*Id.* at 28).

## IV. Discussion

<u>Motions for Summary Judgment</u>

To establish a claim under section 1983 against Oaks, Plaintiff must show Oaks was deliberately indifferent to his serious medical needs. *Johnson v. Hamilton*, 452 F.3d 967, 972–73 (8th Cir. 2006) (citing *Camberos v. Branstad,* 73 F.3d 174, 175 (8th Cir. 1995)). To show deliberate indifference, Plaintiff must prove that he suffered from one or more objectively serious medical needs, and that Oaks actually knew of but deliberately disregarded those needs. *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014). This is an extremely high standard that requires a mental state "akin to criminal recklessness." *Id.* (quoting *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014)). Thus, Plaintiff must show "more than negligence, more even than gross negligence." *Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)). He must demonstrate that Oaks's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997). A plaintiff cannot successfully demonstrate deliberate indifference by alleging facts which show merely that he disagreed with the treatment offered to him, or that prison officials failed to implement his chosen form of treatment. *Jolly*, 205 F.3d at 1096; *Long v. Nix,* 86 F.3d. 761, 765 (8th Cir. 1996).

Plaintiff has presented evidence of an objectively serious medical need that officials knew of, *see Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (medical need is serious if obvious to a layperson or supported by medical evidence, like a physician's diagnosis). The treatment notes indicate that Plaintiff suffered from degenerative disc disease resulting in chronic

pain, for which he was evaluated by two neurosurgeons. Thus, this case turns on whether Oaks deliberately disregarded those needs.

Plaintiff in his cross motion for summary judgment claims that Oaks ignored the recommendations of two neurosurgeons that Plaintiff undergo back surgery to correct his condition, instead requiring Plaintiff to submit to alternative treatment plans, including epidural steroid injections and physical therapy. Plaintiff asserts that as a result of these actions, he suffered unnecessary pain, and he claims that his condition, left untreated, became irreparable and permanent as a result of Oaks's deliberate indifference.

The Court has carefully reviewed the record and concludes that there is no evidence to suggest that Oaks was deliberately indifferent to Plaintiff's medical needs. In fact, it appears that Oaks treated Plaintiff regularly and carefully documented Plaintiff's complaints of pain. On several occasions, she submitted requests for x-rays and MRIs to identify the cause of his pain and identify any changes. She also submitted a request that Plaintiff be referred to another neurosurgeon for a consultation after SLU Neurosurgery failed to respond. She repeatedly refilled Plaintiff's existing medications and prescribed different medications for new symptoms. She discussed with him how to use his wheelchair for mobility and pain management.[6]

Notably, it was not Oaks who denied Plaintiff's request for surgery. Instead, it was the RMD who decided that Plaintiff should try epidural steroid injections to see if it provided Plaintiff any relief. When the epidural steroid injections were unsuccessful, Oaks again sought approval for Plaintiff to undergo surgery. Again, that request was denied, and Plaintiff was prescribed physical therapy instead. Further, although Plaintiff blames Oaks for the fact that he

---

[6] Plaintiff in his complaint seeks injunctive relief on the basis that he requested and was refused use of a wheelchair. This is refuted by the record, and thus, the Court will grant summary judgment in favor of Oaks on that claim.

did not receive an egg crate mattress, the record reflects that his request was reviewed by the health services administrator, medical director, and grievance officer, who concluded a special mattress was not medically indicated.

Thus, the Court concludes that at most, the evidence establishes that Plaintiff disagreed with the course of medical treatment he was provided. This does not establish a claim of constitutional significance. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (a "mere disagreement with treatment decisions does not rise to the level of a constitutional violation").

Plaintiff in his briefing expresses his suspicion that Oaks never followed up with the neurosurgeon at SLU Neurosurgery. He also contends that the details of his discussions with Oaks are not reflected in the medical record, and he claims that Oaks told him that the prison was trying to save money by not referring cases to surgery. However, Plaintiff offers no support for his claims, other than his own affidavit,[7] and the evidence in the record contradicts his assertions.

Motion for Appointment of Counsel

The Court will deny Plaintiff's motion for appointment of counsel. In civil cases, there is no constitutional or statutory right to appointed counsel, including cases filed by prisoners in § 1983 cases. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). "The relevant criteria for determining whether counsel should be appointed include the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal

---

[7] Plaintiff centers his briefing on the degenerative disc disease in his back. He does not brief the issue of alleged indifference to his knee condition. The record reflects that Plaintiff received consistent treatment for his knee pain, and in January 2017, he reported that the pain had largely resolved. In any event, to the extent that Plaintiff asserts a § 1983 claim for deliberate indifference to his serious medical needs related to his knee, that claim is unsupported by the record, and summary judgment will be granted in favor of Oaks.

arguments." *Phillips v. Jasper County Jail*, 437 F.3d 791, 794 (8th Cir. 2006). Here, the factual and legal issues presented in this case are not overly complex, and Plaintiff has proved very capable of representing himself, as demonstrated by his thorough and well-researched motion for summary judgment.

**V.     Conclusion**

For the reasons discussed above, the Court concludes that Oaks has established her entitlement to summary judgment as to Plaintiff's claims against her, and Plaintiff has failed to establish that Oaks was deliberately indifferent to his serious medical needs.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Shannon Oaks's Motion for Summary Judgment (Doc. No. 45) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 52) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for appointment of counsel (Doc. No. 55) is **DENIED**.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Dated this 26th Day of August, 2019.